UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY KIRBY,

     Plaintiff,

vs.

YONKERS SCHOOL DISTRICT and
BERNARD PIERARZIO, sued in his
individual capacity,

     Defendants.

-------------------------------------------x

**COMPLAINT**

**07 CIV 10684**

*JUDGE ROBINSON*

By and through his counsel, Michael H. Sussman, plaintiff

hereby sues defendants for the outrageous deprivation of rights

which they perpetrated against him during the 2006-07 school

year.

## I. **PARTIES**

1.  Jeffrey Kirby, the plaintiff, is a resident of the County of

Nassau, State of New York.

2.  During the 2006-07 school year, plaintiff worked as a

Health and Physical Education teacher at the middle school level

in Yonkers.

3.  Defendants assigned plaintiff to the Hawthorne Middle

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

School.

4.  Defendant Yonkers School District is a municipal body which may sue and be sued pursuant to 42 U.S.C. sec. 1983.

5.  Defendant Bernard Pierarzio is the duly appointed Superintendent of Schools for the school district.  He is sued in his individual capacity because his acts and omissions, while taken in his official role as School Superintendent, subject him to individual responsibility for the willful violation of plaintiff's constitutional rights.

II. **JURISDICTION**

6.  This Honorable Court has jurisdiction over this matter by and through 28 U.S.C. secs. 1331, 1343 (3) & (4) and 42 U.S.C. secs. 1983 and 1988.  This Court also has jurisdiction over the supplemental claims which arise from the same nucleus of operative facts pursuant to 28 U.S.C. sec. 1367.  Plaintiff timely filed a notice of claim against defendant Pierarzio for his slanderous statements.

III. **STATEMENT OF FACTS**

7.  Plaintiff is a certified K-12 teacher in the State of New York.

8.  Plaintiff was so certified at the time he was hired by the school district.

9.  During the 2006-07 school year, plaintiff had numerous formal and informal observations, which were all positive.

10.  On January 24, 2007, plaintiff taught a seventh grade sex education lesson in a manner consistent with the New York State Education Department curriculum.

11.  Two days before, on January 22, 2007, Dennis Campanera, principal of Hawthorne Middle School, had observed plaintiff teach the exact same lesson, stayed for nearly the entire lesson and complimented plaintiff on his presentation of the lesson.

12.  One parent of a female student in the class referred to in para. 10 complained to the school principal that the class which plaintiff taught was inappropriate and the content too

graphic.

13.  Shortly after registering this complaint by phone, the same parent came to the school to meet with the Principal and Assistant Principal.

14.  The principal summoned plaintiff into the meeting.

15.  The parent was angry and accused plaintiff of teaching an inappropriate lesson.

16.  He asked plaintiff how he would like it if he had asked plaintiff's daughter to draw a penis.

17.  Plaintiff explained that the assignment was provided to him by the chair of the health department and had long been used in the school.

18.  Plaintiff also pointed out that the parent's daughter had only been in the class for about a minute during the entire exercise.

19.  The parent continued to berate plaintiff and stated he should not be teaching children.

20.  The parent also criticized the approved text book used

for the sex education class.

21.  At one time during the meeting, plaintiff apologized to the parent's child, who had been brought into the meeting, and explained that the exercise to which she and her father took such offense was part of the standard curriculum and that he had not intended to make her feel uncomfortable.

21.  Toward the end of the meeting, the parent told plaintiff that he would have him fired, that he was going to call the news, that he had powerful friends and that plaintiff would not have a job the following day.

22.  During this meeting, the principal and assistant principal sat mute, deferred to the parent and did not defend plaintiff.

23.  After the meeting, the principal directed plaintiff back to class and told him not to teach any sexuality lessons until further notice.

24.  The following day, the principal came into plaintiff's class and observed that plaintiff was not teaching anything about

sexuality.

25.  At about 2:30 pm that afternoon, the Assistant Principal told plaintiff to report to the personnel office at central headquarters.

26.  Plaintiff complied with that direction and met with James Rose, the district' s Athletic Director and plaintiff's out of building supervisor.

27.  The day before, when plaintiff had explained the situation to him on the phone, Rose told Kirby not to worry about it, that some parents over-react and that plaintiff had not done anything wrong.

28.  On this occasion, however, Rose told plaintiff that while he not done anything wrong, it would be prudent for him to transfer to an elementary school which needed a start-up physical education program.  Rose explained that plaintiff should return the following morning to start his new assignment.

29.  Concurrent with this meeting, a camera crew from Channel 12, a local television station, arrived at Hawthorne

Middle School.

30.  The following morning, plaintiff arrived at the personnel office and was advised by Dr. Lugo, the director of personnel, that the matter was 'on the news' the prior evening and that his transfer was off.

31.  Lugo further advised plaintiff that he was going to be terminated in two months because the matter was on the news.

32.  Acting at the direction of defendant Pierarzio, Lugo refused to assign plaintiff to a new school and directed him go home and report Monday to the Personnel office.

33.  At about 11:00 am, Friday, January 26, 2007, defendant Pierarzio conducted a news conference during which he stated that plaintiff's conduct was "unprofessional and unacceptable".

34.  On no occasion did defendant Pierarzio indicate to the media that plaintiff had been teaching in accordance with the New York State or School District curriculum.  On the contrary, without meeting with or discussing the matter with plaintiff,

Pierarzio slandered his professional reputation.

35.  Thereafter, plaintiff was assigned to do clerical work for the next two months at central headquarters.

36.  On or about March 15, 2007, plaintiff was to be terminated by a vote of the Yonkers Board of Education.

37.  On March 19, 2007, plaintiff received a written ""formal" admonition from Rose.

38.  Rose was directed to prepare this admonition by defendant Pierarzio.

39.  The admonition falsely claimed that Kirby had been directed by his principal before the class to desist from doing "icebreaker" exercise at the start of his class.

40.  As a consequence of pressure from parents, the media and Kirby's counsel, defendants did not terminate plaintiff in March 2007 but, instead, re-assigned him to Emerson Middle School where he was supposed to serve as a permanent substitute in health and physical education.

41.  In fact, plaintiff was assigned to cover nearly every

class at Emerson middle school other than health and physical education.

42.  As he had done throughout his time at Hawthorne Middle School, plaintiff satisfactorily performed the duties assigned to him at Emerson.

43.  Plaintiff frequently was assigned to very difficult classes at Emerson.

44.  When he summoned school security for assistance, on many occasions, security did not respond in a timely fashion and, sometimes, they did not respond at all.

45.  One security guard actually admitted to plaintiff that this failure to respond was volitional and intentional.

46.  On or about June 5, plaintiff attempted to discipline an out of control student.

47.  This student, K., was throwing paper balls at other students.

48.  Plaintiff asked him to stop and the student replied, "Fuck off," and continued the same conduct.

49.  Plaintiff calmly removed the paper from K's desk as a means of stopping him from making such balls.

50.  As plaintiff was not left any lesson plans, he decided to put a movie on the VCR.

51.  As plaintiff put a movie in the VCR, K. moved a chair and sat right in front of the television.

52.  Plaintiff told the student to return to his chair and he told plaintiff that he wanted to sit in this "fucken chair."

53.  Plaintiff told the student to put the chair back and go sit in his chair.

54.  The student then arose and responded, "I'll punch you in the face mother fucker".

55.  The student then chest bumped plaintiff and asked him what he was going to do, mother fucker.

56.  Plaintiff then called security from the corner of his room and asked for assistance.

57.  K. again moved toward plaintiff and again chest-bumped Kirby.

58. K. also pushed plaintiff and again threatened him.

59.  Plaintiff advised the student to back off and not touch him again.

60. K. came toward plaintiff and again bumped into him.

61. This time, K. pushed plaintiff against the wall in the corner of the classroom.

62. Plaintiff then pushed K's shoulders to separate himself from the student.

63. In so acting, plaintiff was defending himself from what he viewed as an emergent situation.

64. Eventually, three school administrators and several security guards responded to the scene.

65. By that time, K. was in the classroom with the other students, laughing and proclaiming that they "owned" the school.

66. A security guard then walked K. down to the office.

67. Plaintiff told the school' principal that he did not want to press charges, but did want to speak with the student in the principal's office and explain that his behavior was not

appropriate.

68.  The school principal stated he would take care of the matter and disallowed plaintiff from speaking with K.

69.  Plaintiff asked the principal to immediately get statements from the other students in the classroom.

70.  The principal told plaintiff to take a break.

71.  In the meantime, the assistant principals, in charge of the classroom, took no statements.

72.  Within a short period of time, the principal assailed plaintiff for speaking to security and "going behind his back".

73.  The defendants did not conduct a timely investigation.

74.  The Emerson principal and those investigating this situation coached students to make false claims about plaintiff's conduct.

75.  At the end of the school year, defendants terminated plaintiff.

76.  By then, plaintiff had filed a notice of claim against the school superintendent for the slanderous statements made in late

January 2007.

77.  Defendants had no basis to terminate plaintiff.

77.  Defendants acted to terminate plaintiff to punish him for his filing of a notice of claim and for his teaching the State curriculum.

78. Plaintiff has not been able to find comparable employment.

79.  Plaintiff has suffered pecuniary and non-pecuniary loss as a consequence of defendants' act, as set forth herein.

80.  In April 2007, plaintiff filed a notice of claim against defendants.

81.  Plaintiff has had no name clearing hearing to this date.

82.  Plaintiff's professional reputation has been besmirched by the superintendent's false comments about his unprofessional conduct.

83.  After defendant terminated him, plaintiff applied to more than 100 school districts for full-time employment and received no offers for such employment.

84.  Plaintiff's issues with Yonkers have been publicized and made his gaining comparable employment much more difficult.

IV. **CAUSES OF ACTION**

85.  Plaintiff incorporates paras. 1-84 as if fully re-written herein.

86.  By terminating plaintiff for his filing a notice of claim and for his teaching from the New York State curriculum, defendants violated the First Amendment to the United States Constitution as made actionable by and through 42 U.S.C. sec. 1983.

87.  By failing to accord plaintiff a name clearing hearing after publicly besmirching his reputation and in concert with firing him from his employment, defendants violated the due process clause of the  Fourteenth Amendment to the United States Constitution as made actionable against them pursuant to 42 U.S.C. sec. 1983.

88.  By terminating plaintiff for allegedly attempting to defense himself from an attack by an assaultive student, the

defendants violated the substantive due process clause of the Fourteenth Amendment in that such a basis was utterly arbitrary and capricious and, in fact, motivated by illegal retaliatory animus.

89.  By slandering plaintiff's professional reputation with no basis in fact, defendant Pierarzio violated plaintiff's common law rights as protected by the laws of the State of New York.

## V. **PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that this Court:

a) accept jurisdiction over this matter;

b) empanel a jury to fairly hear and decide all issues within its rightful jurisdiction;

c) award to plaintiff and against both defendants, jointly and severally, compensatory damages with pre and post-judgment interest for the pecuniary and non-pecuniary injuries he suffered;

d) award to plaintiff and against defendant Pierarzio punitive damages for his malicious violation of plaintiff's First Amendment rights;

e) reinstate plaintiff to his former position or provide him front pay for a period no less than three years in duration;

f) award to plaintiff attorneys fees and costs arising from this litigation and

g) enter any other award or judgment the court deem just, proper and in the interests of justice.

Respectfully submitted,

MICHAEL H. SUSSMAN [MHS-3497]

SUSSMAN & WATKINS
PO BOX 1005
GOSHEN, NY 10924

COUNSEL FOR PLAINTIFFS

DATED: NOVEMBER 26, 2007